**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan (JM-0232)
Michael R. Dal Lago (MD-8034)

Attorneys for Neustar Realty LLC and
Samdor Development LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| RIVERAIR LLC, et al., | : | Case No. 04-17586 (SMB) |
| | : | |
| Debtors. | : | Jointly Administered |

-----------------------------------------------------------x

## MOTION FOR ORDER DISMISSING THE CHAPTER 11 CASE FILED BY RIVERAIR LLC FOR LACK OF AUTHORIZATION TO FILE A PETITION FOR RELIEF

Neustar Realty LLC ("Neustar") and Samdor Development LLC ("Samdor" and together with Neustar, "N&S"), by their undersigned counsel, Morrison Cohen LLP, hereby move this Court for an order, pursuant to sections 105 and 301 of Title 11 of the United States Code ("Bankruptcy Code"), dismissing the chapter 11 case filed by RiverAir LLC, one of the above-captioned debtors ("Debtor"), for lack of authorization to file a petition for relief with this Court ("Motion"). In support of this Motion, N&S respectfully sets forth and represents as follows:

### JURISDICTION

1.    The Court has jurisdiction over the Motion under 28 U.S.C. §1334 and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court of

the Southern District of New York (Ward, Autin C.J.), dated July 10, 1984. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding and the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The basis for the relief requested herein is sections 105 and 301 of the Bankruptcy Code.

## PRELIMINARY STATEMENT

2.     Prior to the filing of the Debtor's petition for relief with this Court ("Petition"), Debtor RiverAir Holdings LLC pledged to N&S 100% of the membership interests of the Debtor ("Membership Interests"). As more fully described below, on or about October 28, 2004, N&S exercised its rights in accordance with the unambiguous terms of the Pledge Agreement, ("Pledge Agreement"), and took control of the Membership Interests, including all Voting Rights, in the Debtor. Accordingly, as of October 28, 2004, N&S had the sole power of management of the Debtor. Notwithstanding this undisputable fact, Percy R. Pyne, IV, on behalf of RiverAir Holding LLC, purportedly the sole member of the Debtor, signed the "Written Consent" authorizing the voluntary filing of the Debtor's Petition with this Court on November 29, 2004. At no point did N&S authorize this filing. To the contrary, N&S expressly forbade the filing of the Petition. This motion seeks to dismiss the Debtor's chapter 11 case because the filing of the Petition was unauthorized and filed in bad faith.

## BACKGROUND

3.     Neustar and Samdor are limited liability companies organized under the laws of the State of New York having their principal place of business c/o Broadway Management Co., Inc. at 80 Broad Street, New York, New York 10004.

4. The Debtor, RiverAir LLC, is a limited liability company organized under the laws of the State of New York, located at Phoenix Four Fund, c/o The Pyne Companies, Ltd, 40 Wall Street, 62nd Floor, New York, NY 10005.

5. RiverAir Holding LLC, also a debtor and debtor-in-possession herein ("Holding"), is a limited liability company organized under the laws of Delaware having its principal place of business at Carnegie Hall Tower, 152 West 57th Street, 44th floor, New York, New York 10019.

6. In or about 2000, Neustar and Samdor created the Debtor for purposes of developing a 108,000 square foot residential condominium building on a property located at 210 West 91st Street on the west side of Manhattan ("Project").

## A.  N&S Sell RiverAir LLC to Holding

7. The Debtor, before being sold to Holding as set forth below, had begun developing the Project and had incurred obligations in excess of $1.6 million to commence development of the Project, including acquiring certain air rights, hiring professionals and otherwise undertaking to design and construct the Project. Thus, N&S had created significant value in the Debtor, even though the Project was still in its initial stages.

8. Holding is an entity owned and controlled by Phoenix Four, Inc. ("Phoenix Four"). In the latter part of 2000, Phoenix Four expressed a desire to acquire the Debtor through its affiliate, Holding. Once acquired, Phoenix intended to develop the Project for its benefit, as well as for the benefit of N&S and their affiliates.

9. On or about June 6, 2001, N&S entered into a Purchase and Sale Agreement ("Sale Agreement") with Holding, pursuant to which N&S sold to Holding one hundred percent (100%) of the Membership Interests in the Debtor.

10.     Simultaneously with the execution of the Sale Agreement, Holding executed a purchase money Promissory Note in the amount of $1,639,748.00 ("Note"), a copy of which is attached as Exhibit A.

11.     In connection with the Note, Holding executed the Pledge Agreement, a copy of which is attached as Exhibit B. Pursuant to the Pledge Agreement, Holding pledged to N&S the Membership Interests as security for repayment of the Note.

## B.     The Pledge Agreement Plainly Permits N&S To Control The Debtor

12.     The Pledge Agreement provides, among other things, that upon an Event of Default under the Pledge Agreement, N&S (referred to in the Pledge Agreement as the "Pledgees") are entitled to have the Membership Interests registered in their names and to exercise absolute and total control over the Debtor. The Pledge Agreement provides in pertinent part:

> If an Event of Default shall occur and be continuing, then all such Pledged Interests at Pledgee's option shall be registered in the name of Pledgee or its nominee, and Pledgee or its nominee may thereafter exercise (i) all Voting Rights, all membership and other rights pertaining to the Pledged Interests and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to the Pledged Interests as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Pledged Interests upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of the Company or upon the exercise by Pledgor or Pledgee of any right, privilege or option pertaining to such Pledged Interests, and in connection therewith, the right to deposit and deliver any and all of the Pledged Interests with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Pledgee shall have no duty to exercise any such right, privilege or

> option and shall not be responsible for any failure to do so or delay in so doing.

See Exhibit B, ¶ 7(a).

     13.    Moreover, the Pledge Agreement provided expressly that Holding (referred to in the Pledge Agreement as the "Pledgor") irrevocably instructed the Debtor to treat N&S, upon receipt of a notice declaring an Event of Default under the Pledge Agreement, as the sole members of the Debtor.

> Upon the occurrence of an Event of Default, Pledgee shall have the right, to the extent permitted by applicable law and upon the giving of written notice to Pledgor, to . . . succeed, or designate one or more nominee(s) to succeed, to all right, title and interest of Pledgor (including, without limitation, the right, if any, to exercise all Voting Rights on or to take any action with respect to company matters relating to the Company) as the sole member of the Company. Pledgor hereby irrevocably directs the Company on receipt of any such notice (A) to deem and treat Pledgee or such nominee in all respects as the sole member of the privileges (including, without limitation, all Voting Rights) to receive all Distributions, to be credited with the capital account and to have all other rights, powers and privileges appertaining to such limited liability company membership interest to which Pledgor would have been entitled had Pledgor's limited liability company interests in the Company not been transferred to Pledgee or such nominee(s), and (B) file amended articles of organization admitting Pledgee or such nominee(s) as a member in place of Pledgor.

See Exhibit B, ¶ 8(b)(i).

     14.    Furthermore, the Pledge Agreement could not be waived or modified by N&S, except in a signed writing; inaction by N&S could not be deemed a waiver:

> Pledgee shall not by any act, delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any default or in any breach of any of the terms and conditions hereof.

See Exhibit B, ¶ 14(c).

15.     Finally, among the other remedies set forth in the Pledge Agreement, Holding agreed to permit Plaintiffs to strictly foreclose on the pledged Membership Interests and to accept same in full satisfaction of Holding's obligations under the Note.  See Exhibit B, ¶ 8(b)(ii).

## C.     Holding Has Defaulted on The Note and Pledge Agreement

16.     The Pledge Agreement provides that non-payment of the Note is an Event of Default.  (Exhibit B, p. 2).  There is no question that Holding has not repaid the Note and that a balance of $534,291.77 remains unpaid; in fact, Holding has never disputed that an Event of Default has occurred.

17.     More specifically, by letter dated October 28, 2004, N&S notified Holding, the Debtor, and Phoenix Four that an Event of Default had occurred and was continuing under the Note and the Pledge Agreement ("Notice of Default").  A copy of the Notice of Default is attached as Exhibit C.

18.     Contemporaneously with the service of the Notice of Default, N&S commenced an action for summary judgment in lieu of complaint to collect on the Note.  This action was filed in the Supreme Court of the State of New York Court under Index Number 603597/04.  A copy of the Notice of summary judgment in lieu of complaint is attached as Exhibit D.  Simultaneously therewith, N&S commenced an action for declaratory relief in the Supreme Court of the State of New York under Index Number 603598/04, seeking to enforce their contractual right to control the Debtor ("Declaratory Relief Action").  The Complaint in this action is annexed as Exhibit E.

19.     Also by letter dated October 28, 2004, N&S exercised their right under the Pledge Agreement to strictly foreclose on the pledged Membership Interests. A copy of the strict foreclosure notice is attached as Exhibit F.

20.     On November 2, 2004, N&S's counsel sent a letter to Percy R. Pyne, the individual purporting to be in control of Holding. The letter sought adequate assurances that Holding would abide by its obligations under the Pledge Agreement to allow N&S to control the Debtor. A copy of the November 2, 2004 letter is attached as Exhibit G. Neither the Debtor, nor Holding nor Mr. Pyne have responded to N&S's request for adequate assurances.

**D.      Holding Does Not Dispute That It Has Defaulted**

21.     On November 16, 2004, Holding responded to N&S's action seeking summary judgment in lieu of complaint. The affidavit of Percy R. Pyne sworn to November 16, 2004 is attached as Exhibit H. Significantly, Mr. Pyne's affidavit does not dispute that there is a default under the Note and Pledge Agreement - it merely claims that the records of Holding are in such disarray that Holding is unable to determine whether it has paid the Note.

22.     Moreover, when Holding responded to the complaint in the Declaratory Relief Action, it did not deny that there was an Event of Default under the Note and Pledge Agreement; instead Holding merely denied that it had sufficient knowledge to respond to the Complaint. A copy of Holding's answer in this action is attached as Exhibit I.

23.     Clearly, there is no dispute that Holding has defaulted under the Note. Accordingly, N&S has a variety of remedies available to it under the Pledge Agreement, including, but not limited to, the absolute right to control of the Membership Interests, including any and all voting rights appurtenant to the Membership Interests.

**E.  Without N&S's Authorization, The Debtor Files Its Petition For Bankruptcy**

24.     On November 16, 2004, in a conversation with counsel for N&S, Holding's counsel indicated that Holding intended to file a bankruptcy petition on behalf of the Debtor.  N&S's counsel promptly informed Holding's counsel that Holding no longer had the right to take any action on behalf of the Debtor, and that N&S were the only members of the LLC pursuant to the plain language of the Pledge Agreement.  A copy of N&S's counsel's November 16, 2004 letter is attached as Exhibit J.  Neither Holding nor its counsel responded to the November 16, 2004 letter.

25.     Thereafter, on November 29, 2004, the Debtor, along with Holding, and another affiliated entity (RiverAir II, LLC), filed respective petitions for relief under chapter 11 of the Bankruptcy Code.

**RELIEF REQUESTED**

26.     Section 301 of the Bankruptcy Code provides, in pertinent part that:

> A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.

27.     In the case herein, as discussed above, the Debtor filed its Petition with this Court on November 29, 2004.  Attached to the Petition is a "Written Consent to Action of the Sole Member of RiverAir LLC," dated November 29, 2004 and signed by Percy R. Pyne as the sole Member of Holding ("Written Consent").  A copy of the alleged Written Consent is attached hereto as Exhibit K.

28.     The alleged Written Consent purports to authorize the filing of the Petition by the Debtor.  However, beginning on or about October 28, 2004, as a result of the Event of Default, the specific terms of the Pledge Agreement, and the action taken by N&S,  Holding did

not possess the power of management to authorize the Debtor to file the Petition. As the United States Supreme Court has stated, "the initiation of [bankruptcy] proceedings, like the run of the corporate activities, is left to the corporation itself, i.e. to those who have the power of management." *Price v. Gurney*, 324 U.S. 100, 104, (1945). The determination of who has the power of management is governed by state law. *Id.* at 106-07; *see also, In re Monterey Equities - Hillside*, 73 B.R. 749, 752 (Bankr. N.D. Cal. 1987); *In re Hawaii Times Ltd.*, 53 B.R. 560, 561 (Bankr. D. Haw. 1985); *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 157 (Bankr. D. Maine 1982); *In re Autumn Press, Inc.*, 20 B.R. 60, 61 (Bank. D. Mass. 1982). And where corporate authority is lacking, the bankruptcy court lacks jurisdiction and dismissal is warranted. *See Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255 (8th Cir. 1994)(In the absence of a valid petition, a bankruptcy court has no basis upon which to dispose of a corporation's assets or resolve its debt status). In a case with nearly identical facts to those herein, the United States Court of Appeals for the Eight Circuit held that, where rights under a pledge agreement had been validly exercised resulting in the transfer of the power of management to the pledgee, a bankruptcy filing by the pledgor was improper because the pledgor no longer had management authority or voting rights. *Id.*

29.     In the context of a New York limited liability company, such as the Debtor, the power of management rests in the members of the company. N.Y. Ltd. Liab. Co. Law §401 (Consol. 2004). The Debtor, consequently, could only file for bankruptcy upon the authorization of its members.

30.     As stated above, upon the Event of Default and a demand by N&S, the Debtor was obligated to deem and treat N&S as the sole members of the Debtor and to afford N&S all of the rights, powers, and privileges appertaining to such membership in the Debtor,

including but not limited to, all voting rights of the Debtor. Section 8(b)(i) of the Pledge Agreement is unambiguous: "upon the occurrence of an Event of Default, N&S shall have the right, to the extent permitted by applicable law and upon the giving of written notice to [Holding] to succeed, to all right, title and interest of Holdings (including, without limitation, the right, if any, to exercise all Voting Rights on or to take any action with respect to company matters relating to the company) as the sole member of [the Debtor]."

31.     In furtherance of this provision, Holding irrevocable directed the Debtor "on receipt of any such notice (A) to deem and treat [N&S]. . . in all respects as the sole member of [the Debtor] (and not merely an assignee of [Holdings]), entitled to exercise all the rights, powers, privileges (including, without limitation, all Voting Rights) . . . and (B) file amended articles of organization admitting [N&S] or such nominee(s) as a member in place of [Holdings]."

32.     It is irrefutable that N&S has complied with all of the requirements under the Pledge Agreement to succeed Holding's Membership Interests. N&S sent Holdings and the Debtor the Notice of Default, by letter dated October 28, 2004. N&S then sent two additional demands to Holdings and the Debtor, reiterating the Notice of Default and specifying that (a) N&S were now the sole members of the Debtor, and (b) that a bankruptcy filing by the Debtor without N&S' consent would be unauthorized and in bad faith. In accordance with the terms of the Pledge Agreement, these are the only steps that N&S were required to take to effectuate the succession of N&S to Holding's Membership Interests. No further action was required by N&S.

33.     Yet, despite its acknowledged receipt of N&S's specific demands and Notices of Default, the Debtor – without N&S' authorization – filed the Petition on November 29, 2004.

## CONCLUSION

34.     Clearly, the filing of the Petition was without the authorization of N&S, the Debtor's sole member.  For this reason, the Debtor's filing was without proper authorization and N&S respectfully requests that the Debtor's chapter 11 case be dismissed.  In addition, N&S respectfully submits that Holding's course of action in fling the Petition – with full knowledge that N&S was asserting their rights under the Pledge Agreement – is tantamount to a bad faith filing which warrants the imposition of sanctions.  2218 *Bluebird Ltd. Partnership*, 41 B.R. 540 (Bankr. S.D.Cal. 1984) (There is an implied requirement of good faith when filing any bankruptcy petition).

## MEMORANDUM OF LAW

35.     N&S submits that the relevant legal authorities are set forth herein and that the requirement, pursuant to Local Bankruptcy Rule 9013-1, that a separate memorandum of law be filed in support of this Motion, be waived.

## NOTICE

36.     Pursuant to Rule 6006 of the Federal Rules of Bankruptcy Procedure, notice of this Motion has been given to the Debtor, the Office of the United States Trustee for the Southern District of New York, the list of twenty largest creditors as filed by the Debtor, and all parties that have requested notice in this case.  N&S submits that no other notice need be given.

37.     No previous application or motion for the relief requested herein has been made to this or any other court.

WHEREFORE, N&S respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just and proper.

Dated:   New York, New York
          December 23, 2004

MORRISON COHEN LLP
Attorneys for Neustar Realty LLC and
Samdor Development LLC

By:    /s/ Joseph T. Moldovan    
      Joseph T. Moldovan (JM 0232)
      Michael R. Dal Lago (MD 8034)
      909 Lexington Avenue
      New York, New York 10022
      (212) 735-8600