**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan (JM-0232)
Michael R. Dal Lago (MD-8034)

Attorneys for Neustar Realty LLC and
Samdor Development LLC

Hearing Date and Time:
February 3, 2005 @ 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                               :    Chapter 11
In re:                                                         :
                                                               :
RIVERAIR LLC, et al.,                                          :    Case No. 04-17586 (SMB)
                                                               :
                     Debtors.                     :    Jointly Administered
---------------------------------------------------------------x

## REPLY TO DEBTORS' RESPONSE TO MOTION FOR ORDER DISMISSING THE CHAPTER 11 CASE FILED BY RIVERAIR LLC FOR LACK OF AUTHORIZATION TO FILE A PETITION FOR RELIEF

      The threshold issue before this Court is whether it will give effect to bargained-for rights under a pledge agreement or whether it will create and impose a new judicial requirement for the enforcement of these rights that is neither embodied in the pledge agreement, statutorily required, nor legislatively intended. Neustar Realty LLC ("Neustar") and Samdor Development LLC ("Samdor" and together with Neustar, "N&S" or "Pledgee"), entered into a pledge agreement with RiverAir Holding LLC ("Holding" or "Pledgor") that expressly provided that in the event of a default by Pledgor on a certain loan, Pledgee had the right to exercise all voting rights, and all membership and other rights pertaining to RiverAir LLC, a Debtor herein ("RiverAir"). The facts are not in dispute: a default occurred and in accordance with the terms of the Pledge Agreement, Pledgee conveyed notice of the default and its exercise of the option to

vote and control RiverAir to Pledgor. At that point in time, N&S's right to exercise all voting rights and all membership rights in RiverAir vested and belonged solely to Pledgee: nothing more was required. Nevertheless, in direct violation of express instructions given by Pledgee, Pledgor, claiming to be the sole managing member of RiverAir, commenced this Case. Pledgee's instant motion to dismiss for lack of requisite filing authority then followed ("Motion").

In a nutshell, the Debtors[1] attempt to avoid dismissal of this case by claiming that mere notification by N&S was insufficient to convey the right to exercise all voting and membership rights to the Pledgee, but that some judicial enforcement procedure and judicial finding is required before the rights actually vest. This is simply not the law, is directly contrary to the signed agreements among the parties, and would stand on its head basic commercial practice on which lenders of all kind rely. Should this Court impose such a requirement, it would effectively be leaving the realm of judicial review and, instead, be legislating an additional obstacle for lenders to surmount in order to exercise voting rights and protect their collateral. Respectfully, Movant does not believe the Court should impose such a requirement.

## ARGUMENT

1. As more fully set forth in the Motion, the relief requested by N&S seeks the recognition by this Court that based upon certain prepetition activities, and without more, N&S, as pledgee under the Pledge Agreement, had the right to control the Membership Interest[2] of RiverAir (not of Holding or any other entity) - in accordance with the specific terms under the Pledge Agreement. (In fact, the Pledge Agreement gives N&S greater rights, but N&S is not

---

[1] The Response to the Motion appears to be from three separate Debtors: RiverAir LLC, RiverAir Holding LLC, and RiverAir II LLC (collectively, "Debtors"). Inasmuch as the Motion only relates to the RiverAir LLC chapter 11 case, it is unclear why the Response is from these other debtors and whether the other debtors needed to move to intervene in the motion in order to be heard.

[2] Capitalized terms not defined in this Reply shall have the same meaning ascribed to such terms in the Motion.

asserting these rights before this Court.)  The Debtors argue that the steps taken by N&S, prior to the Petition Date, to enforce its rights under the Pledge Agreement were insufficient and that, in order for the Membership Interest to transfer under the Pledge Agreement, N&S would have had to (i) re-register the Membership Interests, (ii) obtain court verification of the transfer, and/or (ii) foreclose on the Membership Interests through Article 9 of the N.Y.U.C.C. § 9-609(a).  To the extent that this argument is advanced by Holding, it is directly contrary to Holding's agreement and acknowledgement in the Pledge Agreement that: "[t]he rights of the Pledgee under this Agreement shall not be conditioned or contingent upon the pursuit by Pledgee of any right or remedy against the Pledgor … . [Pledgee shall not be] under any obligation to … take any other action whatsoever with regard to the Collateral or any part thereof."  Pledge Agreement ¶ 7(b). Accordingly, Holding is estopped from making this argument. RiverAir is similarly barred from making this argument by virtue of its "Acknowledgement and Consent of the Company," exhibit A to the Pledge Agreement (Exhibit B to the Motion), wherein it agrees that all terms and conditions of the Pledge Agreement are binding on it.

2. Aside from the Debtors' response being contradicted by the Debtors' agreements, the Debtors' response sets up a straw man and argues against granting relief that N&S has not sought and is not before this Court: N&S does not seek ownership of RiverAir. The sole issue before the Court is whether N&S had and has the right to control RiverAir by exercising the voting rights unequivocally granted to N&S under the Pledge Agreement.

3. Specifically, N&S is not asking this Court to authorize it to levy upon or seize real or personal property that collateralizes a loan.  N&S is well aware that such a request would implicate statutory schemes created by the New York Legislature set forth in the New York Uniform Commercial Code and/or the Real Property Actions and Proceedings Law.  But

#526288 v1 \17723 \001

that kind of relief is not sought. Simply put, the exercising of one's rights under a pledge agreement to vote Membership Interests that have been pledged is not equivalent to or tantamount to foreclosing on RiverAir's property: the action N&S took prepetition left RiverAir's assets untouched. Granting the relief sought by N&S – dismissing this Case – similarly leaves RiverAir's assets untouched.

4. In support of their argument that this Court should mandate that N&S, or for that matter, any other party seeking to exercise its rights under a pledge, has to obtain pre-petition judicial relief as a means to enforce its rights under the Pledge Agreement, the Debtors fail to address the plain language of the Pledge Agreement and misread *Keenihan* and other cases.

5. N&S's rights under the Pledge Agreement, which bear repeating herein, are clear and straightforward. Paragraph 7(a) of the Pledge Agreement sets forth N&S's options if an Event of Default occurs:

> 7(a). If an event of Default shall occur and be continuing, then all such Pledged Interests at Pledgee's option shall be registered in the name of the Pledgee or its nominee, and Pledgee or its nominee may thereafter exercise (i) all Voting Rights, all membership and other rights pertaining to the Pledged Interests and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to the Pledged Interests as if it were the absolute owner thereof.

6. Paragraph 8(b)(1) further defines these rights and explains the mechanism for enforcement:

> 8(b)(1). Upon the occurrence of an Event of Default, Pledgee shall have the right, to the extent permitted by applicable law and upon the giving of written notice to Pledgor, to . . . succeed, or designate one or more nominee(s) to succeed, to all right, title and interest of Pledgor (including, without limitation, the right, if any, to exercise all Voting Rights on or to take any action with respect to company

matters relating to the Company) as the sole member of the Company.

7. Clearly, under these provisions of the Pledge Agreement – which are typical in most pledge agreements – there was only one requirement that was necessary to effectuate the transfer of the Membership Interest: Notice to RiverAir. The facts herein are undisputed that N&S provided such notice to the Debtor. *See* Exhibits C, D, E, F, and G of the Motion.

8. Once N&S gave that notice, RiverAir had contractually acknowledged that it could no longer accept direction from anyone other than N&S. In the "Acknowledgement and Consent of the Company," exhibit A to the Pledge Agreement (Exhibit B to the Motion), RiverAir acknowledged and consented as follows:

> Upon the occurrence of an Event of Default, (as defined in the Pledge Agreement), and so long as such Event of Default is continuing, the Company [RiverAir] acknowledges and hereby agrees that Pledgee … shall have certain rights ("Rights") set forth in the Pledge Agreement, including … the right to vote upon all matters on which the holder of the Pledged Interests [Holding] is entitled to vote. The Company hereby recognizes the Rights and agrees to cooperate with Pledgee upon the exercise of such Rights.

9. As of the moment notice was given, any instructions to RiverAir by anyone other than N&S were invalid and RiverAir had no right to act upon them.

10. More importantly, however, the law is equally undisputed that when a pledge agreement specifically provides self-executing language – such as the language in the Pledge Agreement at bar – then the pledgee is not required to enforce its rights through other means. In *In re Eastern Bancorporation*, 23 B.R. 474 (Bankr. E.D. Penn. 1982), the Court was faced with the task of discerning whether a pledgee had the right to file a bankruptcy petition

after receiving voting rights under a pledge agreement[3]. The former officers and directors – like the Debtors – made the argument that the pledgee did not obtain the rights under the pledge agreement because the pledgee did not take action to register the shares under the pledgee's name and that the pledgee was, therefore, not a shareholder of record. Importantly, the pertinent provisions of the pledge agreement in that case (which are almost identical to the Pledge Agreement herein) provided the following rights to the pledgee:

> "At any time after the occurrence of any Event of Default specified in the Loan Agreement, the [pledgee] may, without notice, exercise all voting and corporate rights at any meeting of the shareholders of the issuers of the pledged stock and exercise any and all rights of conversions, exchange, subscription or any other rights, privileges…as if it were the absolute owner thereof….."
>
> "Upon the occurrence of any Event of Default specified in the Loan Agreement, the pledgee shall have the right to vote the shares of the pledged stock…"

Id. at 477.

11. After examining the above provisions, the *Eastern Bancorporation* Court reasoned that the pledgee contracted for two different and distinct rights. First the pledgee had the right to register the pledged shares in its own name. "**More importantly, the agreement gives the pledgee the right upon default – regardless of the whether the pledged shares are registered in its own name – to exercise all voting and corporate rights of the pledgor. Counsel for the former officers has failed to explain why we should not give credence to this alternative right contracted for in the 1976 pledge agreement."** *Eastern Bancorporation*, at 478. The Court further stated that, "to accept the former officer's argument…would mandate that we disregard totally the 1976 and 1977 pledge agreements: (1) made between the pledgor

---

[3] The pledge agreement in *Eastern Bancorporation* was actually comprised of (i) the pledge agreement itself, which was entered into in 1976, and (ii) an addendum to the pledge agreement, entered into in 1977.

and the pledgee; (2) to secure debts owing to the pledgee by the pledgor; (3) collateralized with shares of the debtor corporation; and (4) approved by the former officers present counsel."

12. The *Eastern Bancorporation* Court concluded that, "to deny the pledgee the rights it validly contracted for with the pledgor simply because it acted as 'record owner' rather than as 'pledgee of all the pledgor's corporate rights would, it seems to us, be putting form over substance and equity."

13. In *In re Domestic Fuel Corp.*, 71 B.R. 734 (Bankr. S.D.N.Y. 1987), Judge Schwartzberg recognized and agreed with the holding in *Eastern Bancorporation*. He held that where a pledge agreement, unlike the pledge agreement at issue in *Eastern Bancorporation*, "did ***not*** expressly give the pledgee the right, in the event of a default, to exercise all voting and corporate rights" then a pledgee, upon an event of default, had to resort to a foreclosure sale in order to have the shares transferred to its name, and then call a shareholder's meeting. *Id.* at 738 (emphasis added). If the pledge agreement provision before Judge Schwartzberg had been, as in the *Eastern Bancorporation*, or as in the case at bar, self-effectuating, the provision "would have been honored without the need for [the pledgee's] attempt to obtain title to the … shares through a foreclosure sale." *Id., citing Eastern Bancorporation* at 477.

14. In the case herein, the Pledge Agreement provides the same "different and distinct rights" for N&S as the pledge agreement in *Eastern Bancorporation* and requires nothing more than notice to RiverAir to enforce its rights to vote the membership interests of RiverAir. These controlling facts are irrefutable. Consequently, the Membership Interests and Voting Rights unquestionably transferred to N&S upon the sending of the Notice of the Default to Holding on October 28, 2004. The subsequent bankruptcy filing by the Debtor was never

authorized by N&S, the sole members of the Debtor. Therefore, the Debtor's chapter 11 case must be dismissed.

15. In their Response, the Debtors contend that the holding in K*eenihan v. Heritage Press, Inc.*, 19 F.3d 1255 (8th Cir. 1994) supports the proposition that notice of default, without more, does not turn the voting rights over to the pledgee. The Debtors are wrong. First, like in *Keenihan*, N&S took several steps both to exercise their right to vote and manage RiverAir as it was expressly authorized to do under the Pledge Agreement, including prohibiting in writing the filing of the petition by the Pledgor – a prohibition the Pledgor ignored, but never contested. *See* Exhibit J. N&S also commenced a New York state court proceeding to adjudicate its rights under the Pledge Agreement; however, Pledgor rushed to file this petition before the state court could adjudicate its rights. But the failure of N&S to obtain the temporary restraining order ("TRO") does not distinguish this case from *Keenihan*, because the *Keenihan* decision did not rely on the issuance of the TRO by the state court – the TRO simply made the *Keenihan* Court's decision easier; it was not dispositive. Movant submits that it was the state court's findings – that the stocks rightfully transferred under the terms of that particular pledge agreement – that was critical to the *Keenihan* Court's decision, not the actual issuing of the TRO. That the *Keenihan* Court had the benefit of a belt and suspenders does not mean both were required either in *Keenihan* or in this case.

16. Second, in *Keenihan*, the state court issued the TRO within two days after the event of default. At that time, the only steps taken by *Keenihan* to enforce its rights under the pledge was notice of the default to the pledgor – just as N&S did in this case. It stands to reason, therefore, that in issuing the TRO the state court found *Keenihan's* notice to be a

sufficient form of enforcing its rights under the Pledge Agreement: otherwise, the state court would not have issued the TRO.

17.  Movant further submits, that the Debtors have the procedure backwards: once the default notice was properly given, Holding, if it wanted to block the efficacy of the Notice, needed to seek injunctive relief from the state court – the Pledge Agreement was self-executing and plainly permitted N&S to control RiverAir without further action.

## THE POSTURE OF THE CASE AND THE FACTS

18.  The Debtors' papers are full of factual discussion and extraneous material. It is clear that their goal is to throw enough material up in the air in the hope that they will divert the Court from the pure legal issues before it: to wit, the opening paragraph of their Preliminary Statement and the teaser that they will shortly obtain financing and file a plan.

19.  Although, Movant submits that none of the Debtors' factual statements should influence this Court's decision, it is important to set the record straight so that if the equities are weighed, it is clear that they are with N&S and not with the Debtors.

20.  In or about 2000, Neustar and Samdor created RiverAir for purposes of developing a residential condominium building using the air rights on top of a synagogue on Manhattan's west side ("Project"). N&S had begun developing the Project and had incurred obligations in excess of $1.6 million to commence development of the Project, including acquiring air rights, hiring professionals, and otherwise undertaking to design and construct the Project.

21.  On or about June 6, 2001, N&S and its affiliates entered into a series of transactions with Holding, an entity owned and controlled by Phoenix Four, Inc. ("Phoenix

Four"), whereby in exchange for certain participations and profits, N&S sold to Holding 100% of the Membership Interests in RiverAir. The purpose of the transaction was to permit Phoenix Four to develop the Project for its benefit, as well as for the benefit of N&S and their affiliates.

22. Other than incurring debt, the proceeds of which, upon information and belief, did not benefit RiverAir, **NOTHING** has happened to the Project – no building, no financing, no nothing. The air is still there and it is still empty.

23. The Debtors advise the Court that they are under new management and make the classic argument that "new management" should be given some time and leeway in order to reorganize these companies. This, of course, begs the question of why two of these debtors – Holding and RiverAir II, which have a total of 2 secured creditors (one of which is N&S) and no unsecured creditors – should even be in Chapter 11. But more importantly, it is disingenuous: prior management – which did nothing for four years – was, upon information and belief, an affiliate of Phoenix Four. In fact, the website of Strategic Resources Corporation – i.e., the "prior" management that Debtor now tries to discredit – was described in the relevant transactional documentation as the "investment advisor and fund manager to Phoenix Four, Inc. and its affiliates." To this day, the website of Strategic Resources Corporation describes Phoenix Four, Inc. as its "flagship fund" and at least two of the directors of Strategic Resources Corporation sit on the board of directors of Phoenix Four, Inc., while several other employees it describes on its website as "key staff" also work for Phoenix Four, Inc. This is not new management; it is the exact same management as before. Meet the new boss – same as the old boss.

24. Bottom line, for the past four years, as now, Phoenix Four has either through action or inaction been calling the shots and nothing has happened, to the significant

detriment of N&S and its affiliates. By exercising their rights under the Pledge, Movants are seeking only to direct the operations of RiverAir. After four years where nothing has happened on the watch of the Debtors, their management, and Phoenix Four, it is clearly appropriate and warranted. The equities are on Movant's side.

## CONCLUSION

25. This question before this Court is one of first impression, although Movant believes it can be easily decided on the law and the facts. However, Movant submits that resolution of the question will have ramifications far beyond this small single asset real estate bankruptcy case and requires the Court to consider the impact of its decision on commercial lending in New York State. Movant submits that the process envisioned by the Debtors – conditioning the exercise of rights under a pledge upon a procedural scheme which is not required by statute or agreement – would be an anathema to lenders and greatly disrupt lending in New York. Accordingly, the Motion should be granted and the case dismissed.

WHEREFORE, N&S respectfully requests entry of an order granting the relief requested in the Motion and such other and further relief as is just and proper.

MORRISON COHEN LLP
Attorneys for Neustar Realty LLC and
Samdor Development LLC

By: /s/ Joseph T. Moldovan
    Joseph T. Moldovan (JM 0232)
    Michael R. Dal Lago (MD 8034)
    909 Lexington Avenue
    New York, New York 10022
    (212) 735-8600
