**MORRISON COHEN LLP**  **Hearing Date and Time:**
909 Third Avenue  **February 15, 2005 @ 10:00 a.m.**
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan (JM-0232)
David A. Piedra (DP-9693)
Michael R. Dal Lago (MD-8034)

Attorneys for Neustar Realty LLC and
Samdor Development LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                              :   Chapter 11
In re:                                                        :
                                                              :
RIVERAIR LLC, et al.,                                         :   Case No. 04-17586 (SMB)
                                                              :
                          Debtors.                            :   Jointly Administered
-------------------------------------------------------------x

## OPPOSITION TO MOTION FOR RECONSIDERATION OF ORDER DISMISSING THE CHAPTER 11 CASE FILED BY RIVERAIR LLC

Neustar Realty LLC ("Neustar") and Samdor Development LLC ("Samdor" and together with Neustar, "N&S") respectfully submit this opposition to the motion by debtors RiverAir LLC ("RiverAir"), RiverAir Holding LLC ("Holding") and RiverAir II LLC ("RiverAir II", and collectively with RiverAir and Holding, "Debtors") for Reconsideration of the Order Dismissing the Chapter 11 Case Filed by RiverAir LLC for Lack of Authorization ("Motion for Reconsideration").

There is no basis for reconsideration here and the Motion for Reconsideration should be denied for three reasons. First, under well-settled law in this District, to obtain reconsideration of an order, Debtors must show that this Court overlooked controlling law or dispositive facts on N&S's original motion to dismiss the RiverAir petition for lack of authorization (the "Dismissal

#527472 v4 \17723 \001

Motion"). Nothing in the Motion for Reconsideration identifies such controlling law or dispositive facts overlooked by the Court; instead, the Debtors present a hodge-podge of "new" facts that are completely irrelevant or disproven by the very documents Debtors cite – and all of which facts could have been submitted to the Court in response to the original Dismissal Motion. Second, the Motion for Reconsideration improperly requests relief that this Court was never asked to rule upon in the Dismissal Motion: the Debtors ask this Court to compel N&S to accept a purported "tender" by Holding. Not only is such relief procedurally improper in a Motion for Reconsideration because it was not the subject of the Motion to Dismiss, it is also unnecessary for this Court to decide. If the Debtors feel that N&S has improperly failed to accept a tender under the UCC, they can pursue their UCC remedies in state court. In any event, there has been no proper tender to N&S. Third, the Motion for Reconsideration seeks a stay pending appeal of this Court's February 3, 2005 order dismissing the RiverAir petition (the "Order"); however, the Debtors articulate absolutely no basis for such a stay. In order to obtain a stay pending appeal, Debtors must show irreparable harm, substantial possibility of success on the merits and no harm to another party from the imposition of a stay. Debtors have not even presented argument on any of these required elements, mandating denial of their request. In short, the Motion for Reconsideration is procedurally improper, factually incorrect, and facially incomplete. N&S respectfully request that the Court deny the Motion for Reconsideration in its entirety.

**ARGUMENT**

**A.    There Is No Basis for Reconsideration**

1.    As this Court has previously held, a movant requesting reconsideration under Local Bankruptcy Rule 9023-1 "must show that the court overlooked controlling decisions or

factual matters 'that might materially have influenced its earlier decision.'" *In re Randall's Island Family Golf Centers, Inc.,* 290 B.R. 55, 61 (Bankr. S.D.N.Y. 2002) (Bernstein, J), citing *Anglo-American Ins. Group v. CalFed Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996); *Morser v. AT & T Information Sys.,* 715 F. Supp. 516, 517 (S.D.N.Y. 1989)); accord *Banco de Seguros Del Estado v. Mutual Marine Offices, Inc.,* 230 F. Supp. 2d 427, 428 (S.D.N.Y. 2002); *Griffin Indus., Inc. v. Petrojam, Ltd.,* 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999); *Farkas v. Ellis*, 783 F. Supp. 830, 832-33 (S.D.N.Y.), aff'd 979 F.2d 845 (2d Cir. 1992).

2. Motions under Rule 9023-1 are strictly construed to avoid repetitive arguments on issues that the court has already fully considered. *Randall's Island*, 290 B.R. at 61; see *Griffin Indus., Inc. v. Petrojam, Ltd.,* 72 F. Supp. 2d at 368; *Monaghan v. SZS 33 Assocs.,* 153 F.R.D. 60, 65 (S.D.N.Y. 1994); *Farkas v. Ellis*, 783 F. Supp. at 832.

3. The only "fact" cited by Debtors as a basis for reconsideration is at page 10, paragraph 26 of their Motion for Reconsideration: "the Court's ruling at the hearing did not address the Debtors' argument that Holding, as RiverAir's manager, has the sole authority to commence the chapter 11 case for RiverAir." This statement – unsupported by any factual or legal argument – provides absolutely no basis for reconsideration because the Court considered and disposed of precisely this issue.

4. As this Court has already held, the Pledge Agreement provides that, following default, N&S become sole members of the Company and had the exclusive right to, among other thing "take any action with respect to company matters relating to the Company." (Pledge, 8(b)(i)). This Court found, and Debtors do not dispute, that Holding, RiverAir and/or Phoenix Four received notices from N&S dated October 28, 2004, November 2, 2004, and November 16, 2004, all of which stated that, under the Pledge, Holding had absolutely no authority to act on

#527472 v4 \17723 \001

3

behalf of RiverAir following the notice of default. By playing the semantical game that Holding was acting as a "manager" and not as "owner" of RiverAir ignores the legal import of the notices: that only N&S were authorized to act on behalf of RiverAir. The Court's decision on this matter was proper and consistent with the Pledge and prevailing state law. There is no basis for reconsideration of it.

**B.    Debtors' Excuses for Their Breaches Ring False**

5.    Debtors use the Motion for Reconsideration to attempt to explain for the first time why Debtors repeatedly ignored the notices from N&S and trampled on N&S's rights under the Pledge Agreement. Debtors claim for the first time that two agreements that they have with N&S affiliates – the Participation Agreement and the Letter Agreement – are somehow suspect because they were not entered into at the time of the Note. This argument is preposterous, and is contradicted by the very documents Debtors' cite.

6.    Debtors claim for the first time ever that the Participation Agreement and the Letter Agreement were "intended as satisfaction of Holding's obligation under the Note," purportedly because they were signed at a time when the Note was already in payment default (Motion for Reconsideration, para. 17). There can be <u>no dispute</u> that the Letter Agreement and the Participation Agreement were NOT intended to satisfy Holding's obligation under the Note, because those agreements were required to be tendered at the time the Note was signed – except, in breach of its obligations, Holdings and RiverAir did not do so.

7.    The Note was signed as part of the Purchase-Sale Agreement (the "PSA") attached as Exhibit 6 to the Motion for Reconsideration. The PSA states that, in addition to the Note, Holding was required to deliver to N&S certain "Other Agreements." *See*, Exhibit 6, p. 11, para. 2.4(b)(v). The Other Agreements were defined to include, among other agreements, a

#527472 v4\17723\001

4

"Participation Agreement" and a "Project Management Agreement." (Exhibit 6, p. 6). The terms of the Participation Agreement and Project Management Agreement were spelled out in great detail in a Letter of Intent dated December 29, 2000, which was referred to and incorporated in the PSA, and which is annexed hereto as Exhibit A.

8. Thus, the Participation Agreement and the Letter Agreement (the Letter Agreement is referred to in the PSA as the "Project Management Agreement") were <u>required</u> to be delivered by Holding, but in breach of its obligations, Holding did not deliver those agreements, or cause them to be delivered, until much later – when Holding had already breached its obligations under the Note. Those agreements were <u>never</u> intended to satisfy the Note, because Holding already had an obligation to deliver them in addition to payment on the Note. Thus, Debtors only alleged "defense" to non-payment is contradicted by the PSA it cites in support of the argument.

## C. The "Tender" Issue Is A Red Herring

9. Debtors now contend that they have made "tender" of the amount due under the Note, and ask this Court to compel N&S to accept it. The Court should decline to reach this issue for three reasons.

10. First, even assuming Debtors had made a proper tender to N&S (and it would appear that a "tender" by or on behalf of Holdings, which remains in bankruptcy, may be inappropriate without prior Court approval), such a tender was not a subject of the Motion to Dismiss, and thus is not a proper subject on a motion for reconsideration. A motion for reconsideration "cannot advance new facts or arguments" *Randall's Island*, 290 B.R. at 61. Indeed, a motion for reconsideration is "not a vehicle for 'presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a "second bite at the apple."'"

#527472 v4\17723\001

5

*Randall's Island*, 290 B.R. at 62 (quoting *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir. 1998).

11. Debtors are seeking a second bite at the apple here. Debtors could have made this purported tender prior to the decision on the Motion to Dismiss, but they made a calculated strategic decision not to do so. Debtors assumed that they would prevail on the Motion to Dismiss, allowing them to refrain from repayment to N&S for even longer than they already have. But having taken this strategic risk and lost, the Debtors ask for a "do-over," now tendering payment in an effort to have this Court reverse itself and keep RiverAir in bankruptcy. N&S respectfully submits this is not a proper subject for a Motion for Reconsideration.

12. Second, this Court need not reach the issue of tender, even assuming the purported tender is appropriate. Debtors have remedies under UCC 9-625 in state court should Debtors believe that N&S wrongfully withheld acceptance of Debtors' purported tender. The tender issue has never been before the Court in this case, and it need not be put before the Court now.

13. Third, Debtors' tender argument <u>assumes</u> that Debtors have made proper tender, when in fact they have not. Under UCC 9-623, proper tender requires not only advancement of the principal amount due, but also reasonable expenses of collection, which in this case – due to Debtors' repeated and persistent breaches – exceed approximately $122,872 as of January 2005 (and such expenses continue to accrue.) Moreover, UCC 9-623 permits N&S to request, and compels Holding to tender "fulfillment of all obligations secured by the collateral," including obligations under the Participation Agreement and the Project Management Agreement that were entered into as part of the sale of RiverAir and the execution of the Note. Debtors have refused to provide such assurances to N&S, and also have not indicated their willingness to pay

all of N&S's expenses of collection, as required by UCC 9-623(b)(2). No appropriate tender has been made, and the Court should deny Debtors' motion with respect to it.

14. In short, the tender issue was never previously before this Court, and there is no reason for the Court to adjudicate the issue now. In any event, N&S is entitled to proper tender, including all of its expenses of collection – including the expenses in this Court – and to have a reasonable period to consider the alleged tender and to respond to it in due course.

**D.    There Is No Basis For The "Clarification" Sought By Debtors**

15. Debtors also seek a "clarification" of this Court's decision concerning ownership of RiverAir. Debtors argue that the Court erred in authorizing – upon default – the transfer of the right, title, and interest to the membership interests (including the Voting Rights) of RiverAir (collectively, "Membership Interests"). This argument is flawed.

16. Debtors argue that Article 9 of the UCC governs the transfer of the Membership Interests upon an event of default; however, this overgeneralization of the UCC misinterprets (or overlooks) several important UCC components. For example, the UCC expressly permits parties to agree to circumvent certain provisions of the UCC that would otherwise apply under Article 9. Specifically, section 9-601 of the UCC clearly states that "[a]fter default, a secured party has the rights provided in this part and…those provided by agreement of the parties." Thus, despite Debtors' flawed contention that N&S was required to initiate a foreclosure to obtain the right, title and interest of the Membership Interest, the fact is that under section 9-601 of the UCC, the Pledge Agreement – an "agreement of the parties" – controls the issue. This fact cannot be disputed. Consequently, when faced with the issue of ownership of the Membership Interests as presented in the Dismissal Motion, this Court correctly looked to the controlling authority, the Pledge Agreement, which clearly provides:

#527472 v4\17723\001

7

> Upon the occurrence of an Event of Default, Pledgee shall have the right, to the extent permitted by applicable law and upon the giving of written notice to Pledgor, to . . . succeed, or designate one or more nominee(s) to succeed, to all right, title and interest of Pledgor (including, without limitation, the right, if any, to exercise all Voting Rights on or to take any action with respect to company matters relating to the Company) as the sole member of the Company.

Pledge, para 8(b)(i)

17. The Pledge Agreement mentions absolutely nothing about N&S having to foreclose or initiate a foreclosure proceeding in an attempt to gain control of the Membership Interest. Whether such a foreclosure is required under the UCC is absolutely irrelevant under section 9-601 of the UCC. As the Court correctly points out in the Decision, "the express terms of the Pledge Agreement entitled the movants to become the absolute owner of the RiverAir without the need to foreclose and hence foreclosure was unnecessary." Decision at P. 24. This ruling is well grounded. *See In re Eastern Bancorporation*, 23 B.R. 474 (Bankr. E.D. Penn. 1982); *In re Domestic Fuel Corp.*, 71 B.R. 734 (Bankr. S.D.N.Y. 1987); *Keenihan v. Heritage Press, Inc.,* 19 F.3d 1255 (8th Cir. 1994); *General Trading Co., Inc. v. 2927 Eighth Avenue Corp.,* 2004 U.S. Dist. Lexis 11473 (S.D.N.Y. 2004).

18. Furthermore, in rebuttal to Debtors' argument that N&S's rights under 8(b)(i) of the Pledge Agreement are conditioned "to the extent permitted by applicable law", N&S submits that section 9-601 of the UCC clearly permits (and contemplates) N&S and Holding to agree to an immediate transfer of the Membership Interests in the event of default, without the need of a foreclosure. Holding's reference to section 9-620 and 9-622 of the UCC is, therefore, completely inconsequential to the issues raised in the Motion because those sections of the UCC simply do not apply. Moreover, the Court is not authorized to determine N&S's rights under section 9-620 and 9-622 of the UCC at this juncture because those issues were never raised in the

#527472 v4 \17723 \001

8

Dismissal Motion. The Court was only asked to determine N&S's rights to the Membership Interests, and ownership of RiverAir, under the terms of the Pledge Agreement upon the event of default. Simply stated N&S's (and Holding's) additional rights under the UCC are left for another day and cannot be used by Holding as a basis for reconsideration of the Decision.

### D.      There Is No Basis for A Stay Pending Appeal

19.     Debtors request a stay pending appeal, but make no arguments in support of it. In *Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir. 1992), the Court of Appeals established a four part test for determining whether to grant a motion for stay pending appeal: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated 'a substantial possibility, although less than a likelihood, of success' on appeal, and (4) the public interests that may be affected." *See In Re Country Squire Assoc.*, 203 B.R. 182, 183 (2d Cir. Bankr. App. Panel 1996).

20.     Debtors have not articulated a prima facie case for a stay pending appeal. They have not identified any irreparable injury or likelihood of success on the merits, and have also not even addressed the other factors necessary for a stay pending appeal. Under these circumstances, the Court should deny the motion for a stay pending appeal, as Debtors have failed even to assert a prima facie case for one.

## CONCLUSION

21. There is simply no basis for the relief sought by Debtors in the Motion for Consideration. They have identified no law or facts overlooked by the Court, and seek only relief that this Court need not reach. Debtors have repeatedly ignored and breached their obligations to N&S, and they should not be permitted to continue to do so with impunity. The Motion for Reconsideration should be denied.

WHEREFORE, N&S respectfully requests that the Motion for Reconsideration be denied, and that the Court grant such other and further relief as is just and proper.

Dated: February 14, 2005
New York, New York

**MORRISON COHEN LLP**
Attorneys for Neustar Realty LLC and
Samdor Development LLC

By: /s/ Joseph T. Moldovan
Joseph T. Moldovan (JM 0232)
David A. Piedra (DP-9693)
Michael R. Dal Lago (MD 8034)
909 Lexington Avenue
New York, New York 10022
(212) 735-8600

#527472 v4 \17723 \001