

RECEIVED
FEB 8 2005
U.S. BANKRUPTCY COURT
SO. DIST OF NEW YORK

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------X
                                    :   04-17576
In re Chapter 11 Bankruptcy,        :
                                    :   One Bowling Green
        RIVERAIR, LLC.,             :   New York, New York
                                    :
            Debtor.                 :   February 3, 2005
------------------------------------X
```

TRANSCRIPT OF MOTION
BEFORE THE HONORABLE STUART M. BERNSTEIN
CHIEF UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:            DENNIS J. DREBSKY, ESQ.
                           RICHARD J. BERNARD, ESQ.
                           Nixon Peabody, LLP
                           437 Madison Avenue
                           New York, New York 10022


For David Piedra:          JOSEPH T. MOLDOVAN, ESQ.
                           MICHAEL R. DAL LAGO, ESQ.
                           Morrison Cohen, LLP
                           909 Third Avenue
                           New York, New York 10022


For Amsterdam 91st St.:    PAUL A. RUBIN, ESQ.
                           Herrick, Feinstein, LLP
                           2 Park Avenue
                           New York, New York 10016


Court Transcriber:         SHARI RIEMER
                           TypeWrite Word Processing Service
                           356 Eltingville Boulevard
                           Staten Island, New York 10312

COPY

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE COURT:  _Riverair_.

2          MR. MOLDOVAN:  Joseph Moldovan, Morrison Cohen

3    representing the movant, Sandor and Neustar.  With me is David

4    Dal Lago from my office and Michael Billotto.

5          THE COURT:  We're a lot of lawyers for one motion.

6    As long as the estate is not going I don't care.

7          MR. DREBSKY:  Dennis Drebsky from Nixon Peabody.

8    With me is my associate, Richard Bernard.  We're here for the

9    debtor.

10         THE COURT:  Go ahead, Mr. Moldovan.

11         MR. MOLDOVAN:  Your Honor was briefly informed about

12   the nature of this as part of the first day motions that were

13   filed before this Court.

14         THE COURT:  And now I am well informed having

15   reviewed all the papers.

16         MR. MOLDOVAN:  And that is why I am going to be as

17   brief as possible.

18         THE COURT:  Let me ask you a question from the

19   papers.  It wasn't clear.  What was involved in re-registering

20   the ownership of the membership interest?

21         MR. MOLDOVAN:  The re-registration is an interesting

22   issue, Your Honor.  This particular limited liability

23   partnership agreement does not contain any provisions for re-

24   registration.  Consequently, there is no ability to re-register

25   these shares, these interests.

1    THE COURT: But wouldn't Riverair's books and records

2  reflect -- when I read it I assumed -- I assumed that it was

3  simply a notation on Riverair's books and records that the

4  membership interests were owned by whoever they were owned by.

5    MR. MOLDOVAN: That is one of the ways this could

6  have been accomplished, Your Honor, but they simply did not do

7  it.

8    THE COURT: I understand that. I just want to

9  understand what was involved in this.

10    MR. MOLDOVAN: There is supposed to be annexed to the

11  limited liability agreement, Your Honor, a list of the members.

12    THE COURT: Right.

13    MR. MOLDOVAN: There is no such list. In other

14  words, the provisions of the -- those provisions which relate

15  to re-registration are in essence irrelevant to this particular

16  matter.

17    THE COURT: What evidence was there -- maybe I should

18  ask Holdings this, but what evidence was there that Holdings

19  owned a membership interest?

20    MR. MOLDOVAN: Holdings has said that they did. This

21  was -- they've signed the various documents that were filed

22  before this Court and other courts as the holder, as the owner

23  of these membership interests.

24    THE COURT: I understand that, but --

25    MR. MOLDOVAN: I don't think there was any dispute in

1 this case that Holdings claims to be the sole member of
2 Riverair, LLC.
3          THE COURT:  I understand they claim that, but if
4 you're saying there's no real written evidence that you own it,
5 I'm just asking whether there's any evidence that Holdings owns
6 it.
7          MR. MOLDOVAN:  We signed the operating agreement.
8 Let me see if --
9          THE COURT:  That doesn't prove that they owned it.
10 Morally if this were a corporation it would have a stock book.
11 If they maintain the stock book it would indicate who the
12 stockholders are.
13          MR. MOLDOVAN:  That's correct.
14          THE COURT:  There would be a partnership agreement
15 and everybody would sign the partnership agreement.
16          MR. BERNARD:  Your Honor, can I point through --
17          THE COURT:  Sure.
18          MR. BERNARD:  -- Exhibit B on our response which is
19 the amended and restated operating agreement.  In there it
20 specifically says that Holdings is a sole member, that Neustar
21 and Sandor are withdrawn as members and that Holding is the
22 managing member.  So that's the document in the books and
23 records.
24          THE COURT:  So you tell me then when the Pledge
25 Agreement talks about registration what was involved.  What had

1    to happen in order for -- in your view -- you can sit down.  I

2    just want to understand.  What had to happen in your view for,

3    I'll call it the movants, to become the one hundred percent

4    owners of the membership interest in Riverair?

5              MR. BERNARD:  They had a call meeting.  They had to -

6    -

7              THE COURT:  Why did they have to do that?

8              MR. BERNARD:  Well, they had to go through exactly

9    what they went through here is file with the Secretary of State

10   of Delaware removing the member and putting themselves --

11             THE COURT:  Why did they have to do that?

12             MR. BERNARD:  Because that is what the agreement

13   calls for.

14             THE COURT:  What agreement calls for that?

15             MR. DREBSKY:  Your Honor, specifically the Pledge

16   Agreement talks about registration of the pledged shares in the

17   pledgor or pledgee's name.

18             THE COURT:  But when I read your response -- as I

19   understand your response you said that the movants never became

20   the owners because the debtors didn't register them as the

21   owners.

22             MR. BERNARD:  Correct, Your Honor, and our position

23   would be that the amended and restated operating agreement

24   contains that registration.

25             THE COURT:  So it was up to the debtors to do it?

1           MR. BERNARD:  Well, voluntarily if the debtors

2    consented and complied.

3           THE COURT:  But weren't you contractually obligated

4    to do it?

5           MR. BERNARD:  And if we didn't do it, Your Honor,

6    they could have an action against Holding if they're injured,

7    but we didn't do it.

8           THE COURT:  This is a court of equity.  You're

9    telling me that they didn't become the owners because you

10   didn't do what you were contractually obligated to do.

11          MR. BERNARD:  But, Your Honor, we did contest that --

12   their legal right to ask us to do that.

13          THE COURT:  But I hadn't seen -- in their answering

14   papers I hadn't seen any defense or contest to the underlying

15   claim one, that there was a default, and two, that they really

16   did everything that they had to do under the Pledge Agreement

17   to become the owners.

18          MR. BERNARD:  Well, Your Honor, they didn't do

19   everything they had to do.

20          THE COURT:  What did they have to do?

21          MR. BERNARD:  They had to vote -- well, they had to

22   do two things.  They had to get the name registered.

23          THE COURT:  But that was something you had to do.

24          MR. BERNARD:  Well, and if we refused to do it then

25   they could take a vote and claim that they're members and --

1    THE COURT:  So tell me what rights you had not to do

2  it.  That's all.

3    MR. DREBSKY:  Well, Your Honor, we refuted or

4  disputed their request in our answer -- in answering their

5  complaint to compel us to do that.

6    THE COURT:  But I thought that the -- there's no

7  dispute that the debtor -- whoever was liable for the note was

8  in default; right?

9    MR. DREBSKY:  Well, there's no dispute that they

10  are -- that money was lent, but there are significant in

11  answering -- I think what you had here is --

12    THE COURT:  Just show me where that is in your

13  papers.

14    MR. DREBSKY:  It's in the answer in the -- actually,

15  it's in their papers because they filed the answer.  See, they

16  brought a declaratory judgment action in state court.

17    THE COURT:  Well, yes, they had to bring actions

18  because you wouldn't do what they say you were supposed to do.

19    MR. DREBSKY:  We responded.

20    THE COURT:  I have your papers here.  Just tell me

21  what the defense is to their claim that they own the membership

22  interest other than that you didn't register it.

23    MR. BERNARD:  Your Honor, bottom line is that at the

24  end of -- well, even still regardless, the operating agreement

25  vests the managing powers into Holding.

1      THE COURT:  I understand that.

2      MR. BERNARD:  As a managing member it has authority

3  to commence a bankruptcy case.  So even if --

4      THE COURT:  But they're saying -- don't you have to

5  own the membership interest to be a managing member?  You're

6  insider managers; right?

7      MR. BERNARD:  No, I don't believe the LLC statutes

8  require -- I'm not exactly sure that that's true under the LLC

9  statute.

10      THE COURT:  So you're saying that as a non-member you

11  have the authority to do this, vested in you in a LLC?

12      MR. DREBSKY:  We were still the members.  They didn't

13  remove us as members.  We contested their right.  In fact, if

14  you look at the underlying case law, Your Honor, what happened

15  in case after case when that happened, and it's the cases that

16  they've -- you go to court, you seek either a TRO --

17      THE COURT:  But that's a procedural -- that's a

18  procedural step and every one of these agreements is different.

19  I'm still trying to understand why you say that we're entitled

20  to it other than that you didn't register them.

21      MR. DREBSKY:  Well, there was -- in answer to their

22  complaint there were six affirmative defenses.

23      THE COURT:  I'm looking at the motion papers.  They

24  make a motion.  I look at the response and I try to figure out

25  what the issues are and resolve them.  I'm looking at your

1 motion papers and all I seem to -- all I see is that you say

2 well, the debtors didn't register them so therefore they're not

3 owners.

4        MR. DREBSKY:  Well, we don't believe all -- we don't

5 believe underlying that they're entitled.  We believe that

6 there's been misconduct.  In fact, we've asked for 2004 --

7        THE COURT:  Where is that?

8        MR. DREBSKY:  That's an answer to their underlying

9 complaint in the declaratory judgment --

10        THE COURT:  But the only thing you put in your

11 response is that they're not members because we didn't register

12 them.

13        MR. DREBSKY:  No.  That is not -- we said they had to

14 go to court and seek their rights.  They didn't --

15        THE COURT:  That I understand.  You're saying that

16 procedurally when you don't register them as they claim you're

17 required to do under the agreement they have to go to court to

18 effectuate that and that's your argument.

19        MR. BERNARD:  Yes.

20        THE COURT:  I got it.

21        MR. BERNARD:  Second --

22        THE COURT:  You're getting double -- you have three

23 lawyers.  So --

24        MR. BERNARD:  Secondly, the next step involved in

25 that would be to remove Holding as the managing member because

1  now if they're recognized as the equity interest holders they

2  could arguably replace Holding as a managing member which is

3  set up through the operating agreement which governs here which

4  has never been changed all through --

5       THE COURT: But I notice the bankruptcy purported to

6  be authorized by a vote of the members --

7       MR. BERNARD: There is only one member.

8       THE COURT: Right. Didn't they have the voting

9  rights as a result of the default?

10      MR. BERNARD: Your Honor, I believe that under the

11 LLC statute and under the amended operating agreement, Holding

12 actually as the managing member of Riverair has the ability and

13 the authority to put Riverair into bankruptcy. There's no

14 specific requirement in the LLC statute that members vote on

15 whether the LLC goes into bankruptcy. The authority --

16      THE COURT: You're saying you had the right to manage

17 this LLC even though you had no interest in it?

18      MR. BERNARD: Well, until the -- this is the

19 secondary argument, Your Honor. Obviously our first position

20 is that the --

21      THE COURT: I didn't see it in your papers.

22      MR. BERNARD: But the argument, the position is

23 that -- well, we are still a member, but even if we're not we

24 are the managing member of Holding pursuant to the operating

25 agreement which was never changed, never altered, and as the

1 managing member have a fiduciary duty to the company.

2       THE COURT: If you had complied with the request or

3 the demand they made on October 28th and done everything that

4 they asked you to do in that letter, would you still be the

5 managing agent with the authority to put the company in

6 bankruptcy?

7       MR. BERNARD: Your Honor, I don't believe they did

8 anything to change the fact that we are the -- that Holding is

9 the managing member of Riverair. None of their letters as to

10 replace Holding or say that they acting as members want to

11 change the management of the company. They haven't done

12 anything like that. They never requested anything along those

13 lines.

14       THE COURT: But you recognize that prior to filing

15 there was a vote of the membership interest. So at least

16 implicitly you recognize that you had to vote to put the

17 company in bankruptcy and if you weren't the member and they

18 were the member, how did you conduct that vote?

19       MR. BERNARD: Well, Your Honor, because we disputed

20 their request to change -- to transfer the pledged shares we

21 believe we were still the member and could conduct a vote.

22 Holding conducted its own vote and also authorized the filing

23 for Holding as well as the Riverair, Riverair II in which it

24 was the managing member.

25       MR. MOLDOVAN: It's difficult to determine where to

1  begin.  What you're hearing is --

2          THE COURT:  How about the beginning?

3          MR. MOLDOVAN:  The beginning is a lot of nonsense.

4  They signed a Pledge Agreement.  The Pledge Agreement says they

5  default, we become the voting member.  We succeed to all voting

6  rights.  It just happens.  What they're saying to Your Honor is

7  no, it has to be a please, sir, may I exercise and I should go

8  to one of your -- in some other court and say oh, ignore what

9  we agreed to in our Pledge Agreement and give me declaratory

10  relief.  Where is that written?  It's not written in any

11  statute.  It's not written in any document and it's nothing

12  that has been expressed by the legislature of the State of New

13  York.  So where does this come from?

14          Well, we have our Pledge Agreements, contracts that

15  commercial parties enter into.  This is not a -- your decision

16  here, Your Honor, is not limited to this little dippy single

17  asset bankruptcy case which involves at this moment in time

18  nothing but air.

19          THE COURT:  Literally, right?

20          MR. MOLDOVAN:  Literally air.  We're talking about

21  the air above a synagogue on 91st Street.  There's no building

22  except the synagogue --

23          THE COURT:  It must be holy air.

24          MR. MOLDOVAN:  -- which has always been there.  It's

25  holy air.

1     THE COURT: It's also above a funeral parlor though

2 also, isn't it?

3     MR. MOLDOVAN: So we had this air. That's what this

4 is about. There's no building. There are no hard assets.

5     THE COURT: Well, it must be valuable because you

6 guys are sure fighting hard for it.

7     MR. MOLDOVAN: It is. That's an interesting thing,

8 Your Honor. It is valuable and the folks on this side of the

9 table have done nothing, zippo, nada with this property.

10     THE COURT: That's really not the issue though.

11     MR. MOLDOVAN: You're right which is why we left it

12 for the very end of our papers. The issue is what is Your

13 Honor going to do with respect to a legitimately entered into

14 Pledge Agreement by commercial parties which provides

15 explicitly upon the event of default. Did they pay the loan?

16 No. Did it mature? Yes. Is it in default? No one can deny

17 that. Upon the event of default pledgee shall have the right

18 to succeed, designate one or more nominees to all title and

19 interest of pledgor including without limitation the right, if

20 any, to exercise all voting rights, to take any action as the

21 sole member. This is not part. They just don't want this to

22 happen.

23     But Your Honor is faced with -- as I've said, this is

24 not -- although it's a little dippy case, if Your Honor

25 determines that we had to go to state court to enforce these

1  rights, Your Honor will be doing something no state court in

2  New York has said we have to do.  The New York State

3  legislature hasn't said we have to do, and when I walked around

4  my law firm and spoke to my --

5          THE COURT:  And you asked them because --

6          MR. MOLDOVAN:  I spoke to my commercial partners, my

7  corporate partners, the financier guys.

8          THE COURT:  This is very compelling authority you're

9  about to give.

10         MR. MOLDOVAN:  I said what would happen if this were

11  the case and they said it can't possibly be the case.

12         THE COURT:  Western civilization would come to an end

13  as we know it.

14         MR. MOLDOVAN:  Western civilization reform.  I said

15  this is just --

16         THE COURT:  What's your next point?

17         MR. MOLDOVAN:  That is the point, Your Honor.

18  Everything else is in our papers.

19         THE COURT:  Thank you.  Anything else?  I'll give you

20  the last word.  I'm sorry.  Who are you?  Who do you represent?

21         MR. RUBIN:  Your Honor, Paul Rubin from Herrick

22  Feinstein.  I'm representing Amsterdam 91st Street Associates

23  which is the largest creditor holding the mortgage on the

24  property.  I just wanted to make two points briefly, Your

25  Honor.

One is in terms of context. There was a new event that happened since this motion was filed. The debtor just about two weeks ago filed its schedules, all three debtors did. So have although a motion to dismiss only one case, I would like to mention with regard to the other two Riverair II has only one creditor where --

THE COURT: I understand. I have another case. Let's just get back focused to what we're here for today.

MR. RUBIN: With regard to the motion, putting aside the motion to dismiss we think there is on those cases, it seems to us that -- the debtor is saying that Your Honor -- they should form for a declaratory judgment. That declaratory judgment would have said back in October the debtor didn't have the right and we don't think the debtor -- the Judge today -- the Court should be an agnostic on that issue. If it comes to the point that --

THE COURT: Certainly not with their rights over a synagogue.

MR. RUBIN: That's right, but we agree with what Mr. Moldovan says in terms of the fact that if the Court determines today that there was no valid basis to refuse to do so then as a court of equity it should not take jurisdiction over a case because a party violated rights it was suppose to honor. Thank you, Your Honor.

THE COURT: Thirty seconds, Mr. Drebsky.

1      MR. DREBSKY: One, I just -- in the case the Court is

2 unaware, we have filed a plan to pay everybody off. I think

3 the Court should be aware of that.

4      THE COURT: Well, if you didn't have the authority to

5 file a case the plan is not a very good argument.

6      MR. DREBSKY: We had promised that we would file a

7 plan expeditiously and we --

8      MR. MOLDOVAN: It's also a facially unconfirmable

9 plan.

10     THE COURT: Please. The question is whether on day

11 one they had the authority to do it.

12     MR. DREBSKY: Well, you look at the very cases that

13 were cited here. When there is a dispute as to -- you go to

14 court, you get a TRO. That's what happened in the cases, even

15 in the Bancorp. case that's what happened, the case that's

16 relied upon. You go to court. There's a legitimate dispute.

17     THE COURT: But you know they didn't have to do that

18 because you came to this Court.

19     MR. DREBSKY: Well, we -- we came to this Court to

20 protect an asset. They could have gone and gotten a TRO or

21 anything else and then we would be in a different posture here,

22 Your Honor.

23     THE COURT: Okay.

24     MR. DREBSKY: Everything else is in the papers.

25     THE COURT: Do you want a last word now?

1    MR. BERNARD: Your Honor, I know Neustar Sandor's

2  counsel harped on and this Court acknowledges this is a court

3  of equity. Our plan is confirmable but not getting into that,

4  we do have a signed letter of intent.

5    THE COURT: Right.

6    MR. BERNARD: That letter of intent gets us easily

7  sufficient funds to satisfy Neustar Sandor in full with

8  interest unimpaired and they're sitting in first position. So

9  this is not about --

10    THE COURT: Do you want to withdraw your motion?

11    MR. BERNARD: Absolutely not.

12    THE COURT: So that settles that.

13    MR. BERNARD: Bottom line, this is a case where the

14  secured creditor wants the asset. Obviously the asset has --

15    THE COURT: They're not the secured creditor. They

16  say they're the owner. Sit down.

17    On November 29, 2004, Riverair, LLC, hereinafter

18  Riverair, its parent, Riverair Holding, LLC, hereinafter

19  Holding, and an affiliate Riverair II, LLC filed Chapter 11

20  petitions. On December 23, 2004, Neustar Realty, LLC and

21  Sandor Development, LLC, collectively the movants, filed this

22  motion to dismiss Riverair's bankruptcy case based on the lack

23  of authority to file the petition. For the reasons that follow

24  the motion is granted.

25    The movants created Riverair, a New York limited

1   liability company, in 2000 to develop a 108,000 square foot 45

2   unit luxury residential condominium building at 210 West 91st

3   Street in New York.  The project was to utilize air rights

4   subsequently acquired from adjacent properties in the summer of

5   2001.  Riverair owns the air rights and Riverair II owns

6   certain tax certificates relating to the project.

7          On or about June 6, 2001, the movant sold one hundred

8   percent of the membership interests in Riverair to Holding.

9   Holding executed a promissory note for approximately $1.6

10  million in favor of the movants secured by Holding's pledge of

11  the Riverair membership interests.  The pledge is governed by a

12  Pledge Agreement dated July 16, 2001.  Under Paragraph 6A,

13  Holding assigned its voting rights in Riverair to the movants

14  but under Paragraph 6B Holding continued to exercise those

15  voting rights until an event of default occurred.  At that

16  point, the movants acceded those rights.

17         The Pledge Agreement granted other important rights

18  to the movants in the event of a default.  Under Paragraph 7A,

19  the movants would require that the membership interests in

20  Riverair be registered in their name.  Thereafter, the movants

21  could exercise all of the voting and other rights emanating

22  from the membership interests as if they were the owners of

23  those interests.

24         Under Paragraph 8B1, the movants, upon giving written

25  notice to Holding, succeeded to all of Holding's right, title

1   and interest as sole member of Riverair, including the right to

2   exercise all voting rights or to take any action with respect

3   to company matters.  Under Paragraph 8B1, Holding irrevocably

4   directed Riverair upon the receipt of such notice to 1) treat

5   the movants as the sole member of Riverair; and 2) "file

6   amended articles of organization admitting [the movants] ... as

7   a member in place of [Holding]".

8          Finally, under Paragraph 11, Holding agreed to

9   deliver any documents reasonably requested by the movants

10  necessary to obtain and preserve the benefits of the Pledge

11  Agreement.  Riverair did not sign the Pledge Agreement but

12  executed an acknowledgment and consent of the Pledge Agreement

13  dated July 16, 2001.  Riverair acknowledged that it had

14  registered the pledge of the membership interest on its books

15  and records.  It recognized the movant's rights under the

16  Pledge Agreement.  Lastly, it agreed to cooperate with the

17  movants with respect to those rights.

18         It is undisputed that the note has not been paid when

19  due and an event of default occurred and continued.  Following

20  the default, the movants exercised their rights under the note

21  and Pledge Agreement.  By letter dated October 28, 2004, they

22  advised Holding, Riverair and Phoenix IV, the owner of Holding,

23  that an event of default had occurred and that the movants were

24  exercising their rights under the Pledge Agreement, including

25  those pertaining to ownership and voting.

1    That same day they commenced actions in the Supreme
2 Court of the State of New York, New York County for summary
3 judgment in lieu of complaint to collect on the note and for
4 declaratory relief seeking to enforce their contractual rights
5 to control Riverair.  No judgments or orders were entered prior
6 to the bankruptcy filings which stayed the continuation of a
7 lawsuit.

8    By letter dated October 28, 2004, the movant's office
9 sought to exercise their rights under the Pledge Agreement to
10 strictly foreclose on the pledge membership interests of
11 Riverair in full satisfaction of the amounts due under the
12 note.

13    Finally, on November 2, 2004, the movants sent a
14 letter to Persi R. Pine, the individual purporting to be in
15 control of Holding and Riverair seeking assurances that Holding
16 would abide by its obligations under the Pledge Agreement and
17 allow the movants to control Riverair.  No response was
18 received.

19    On November 29, 2004, the debtors filed the Chapter
20 11 petitions.  The Riverair filing was purportedly authorized
21 by its alleged sole member, Holding.  The person filing a
22 Chapter 11 petition on behalf of the corporation must be
23 authorized to do so under state law.  See Price v. Gurney, 324
24 U.S. 100, 106 (1945).  If the Bankruptcy Court "finds that
25 those who purport act on behalf of the corporation have not

1  been granted authority by state law to institute the
2  proceedings it has no alternative but to dismiss the petition."
3  Id.   In the case of a New York limited liability company,
4  unless the articles of organization provide otherwise,
5  management of the company and consequently the authority to
6  place the company into bankruptcy is vested in a company's
7  members.   See New York Limited Liability Corporation Law,
8  Section 401 (McKinney 2005).

9          The only issue in this case is who as between the
10 movants or Holding was the sole member of Riverair at the time
11 of bankruptcy.   If as the movants contend they held that
12 interest, the Riverair petition was unauthorized.   The debtors
13 do not dispute that a default occurred and continues under the
14 note and Pledge Agreement.   Given the undisputed default, the
15 Pledge Agreement grants the movants the option to cause the
16 membership interests of Riverair to be registered in their name
17 and upon written notice Riverair is directed by Holding to
18 treat the movants as its sole member.   In addition, Riverair
19 separately agreed to cooperate with the movants to exercise
20 their rights.

21         The movants exercised their option through their
22 letter dated October 28, 2004.   The movants sent two additional
23 letters to Holding and Riverair reiterating the demands made in
24 the October 28 letter and specifying that the movants had
25 become the sole members of Riverair and a bankruptcy filing by

1  Riverair without the consent of the movants was unauthorized.

2        Therefore, under the plain terms of the Pledge

3  Agreement, the membership interests of Riverair were required

4  to be registered in the name of the movants and the movants

5  succeeded to all the rights of Holding as sole member of

6  Riverair.  The debtor's papers filed in this motion do not

7  dispute movant's rights under the Pledge Agreement.  Instead,

8  they argue that "[t]he debtors did not consent or comply with

9  [the movants] demand letters including ... the new registration

10 of the Riverair membership interest demanded in the October 28

11 letter."  (See debtor's response at Paragraph 25.)

12       Without such consent, the debtors contend, the

13 movants were "required to obtain relief from a court of

14 competent jurisdiction recognizing [the movants] right to vote

15 the Riverair membership interest."  Id. at Paragraph 32.  The

16 debtors note that the movants sought such relief through their

17 state court actions but did not obtain interim or final relief.

18 The debtor's argument is plainly flawed as it seeks to

19 capitalize on their own breach of duty.  The Bankruptcy Court

20 is a court of equity and "equity regards as done that which

21 ought to be done."  Both Holdings and Riverair contractually

22 agreed to recognize the movant's rights and cooperate with the

23 movants to insure that those rights could be enforced.  The

24 argument that the movants must lose because Holdings or

25 Riverair or both failed to register the change in membership as

they agreed to do rings hallow. The membership interest should have been registered in the movant's name and this Court as a court of equity will deem this to have been done.

In addition, the debtor's position also ignores the adoption of prevention under contract law. A party to a contract that prevents a condition to his performance cannot insist that the condition must occur before he becomes obligated to perform. In re: Trace International Holdings, 284 B.R. 32 at Page 36 (Bankruptcy Southern District of New York 2002).

A corollary principle holds that every contract includes an implied undertaking by each party that it will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on its part. Id. Riverair and Holding failed to re-register the membership interests and they cannot now insist that they don't have to recognize the movants because of that failure. That the movants purports to sue in state court to enforce their rights under the Pledge Agreement hardly improves the debtor's argument. This action was necessitated by the debtor's refusal to comply with those rights in the first place. To insist that the movants must obtain a court order rewards the debtors for their own breach.

I note in this regard that Keenihan v. Heritage Press, Inc., 19 F.3d 1255 (8th Cir. 1994), does not require a

1  court order to effectuate the transfer of membership interest.

2  There, the pledgee sued prior to bankruptcy and obtained

3  injunctive relief recognizing his rights as a stockholder.  The

4  Court dismissed the bankruptcy petition filed by the pledgor

5  relying on the state court disposition.  However, the Court

6  ruled in the alternative and without regard to the state court

7  injunctive relief that the pledgee was entitled to vote the

8  shares as a result of the default on the note and the

9  provisions of the Pledge Agreement.  Id. at 1258.

10       Furthermore, unlike the pledgor in Keenihan, Holding

11  and Riverair were obligated to perform certain affirmative

12  duties, including the duty to treat the movants as the sole

13  member of Riverair and to cooperate with the movants in the

14  exercise of their rights under the Pledge Agreement.  Thus, the

15  parties agreements in this case clearly spell out their rights.

16  In any event, Keenihan is not binding on this Court.

17       The debtors make the additional argument that the

18  movants did not foreclose on the membership interests.

19  However, the expressed terms of the Pledge Agreement entitled

20  to the movants to become the absolute owner of Riverair without

21  the need to foreclose and hence foreclosure was unnecessary.

22  See In re: Domestic Fuel Corp., 71 B.R. 734, 738 (Bankruptcy

23  SDNY 1987) (dicta).  Accordingly, the Court does not have to

24  pass on whether a foreclosure occurred.

25       In conclusion, Holdings lack the authority to

1  authorize the Riverair filing or to sign the petition.  As a

2  result, the Chapter 11 petition of Riverair is dismissed.

3         Do you have an order?

4         MR. DAL LAGO:  We do, Your Honor.

5         THE COURT:  Hand it up, please.  Have you seen the

6  order?

7         MR. BERNARD:  No.

8         THE COURT:  Why don't you take a look at the order?

9              [Pause in proceedings.]

10        MR. DAL LAGO:  Your Honor, in light of Your Honor's

11 ruling in this one case, would Your Honor require a separate

12 motion with regard to the other two?

13        THE COURT:  Yes, I can't dismiss a case without a

14 motion.  It's got to be on notice to creditors and the U.S.

15 Trustee and other parties in interest.

16        MR. BERNARD:  May I approach, Your Honor?

17        THE COURT:  Do you have a disk?

18        MR. BERNARD:  Yes, Your Honor.

19             [Pause in proceedings.]

20        THE COURT:  I struck the first decretal paragraph.

21 I'm signing the order.

22        Where does that leave the 2004 application?  Is that

23 academic?

24        MR. BERNARD:  I don't think -- well, Your Honor --

25        THE COURT:  I started to look at it and then I

1  wondered whether it was necessary to do that.

2        MR. BERNARD:  I don't know.  I don't think -- I think

3  if -- well, we could either withdraw it or --

4        THE COURT:  Why don't you withdraw it without

5  prejudice because you're going to have to redo it if you still

6  think you're entitled to 304 relief.  It sounds like you're

7  going to get a motion in both cases, one case, and unless the

8  discovery bears on the motion and, in fact, if you get the

9  motion you can take the discovery without a 2004 order.  Maybe

10 you can deal with it that way.

11       MR. BERNARD:  We'll withdraw it without prejudice.

12       THE COURT:  We'll mark it withdrawn.

13                      * * * * *

14

15

16

17

18

19

20

21

22

23

24

25

1        I certify that the foregoing is a court transcript from an

2    electronic sound recording of the proceedings in the above-

3    entitled matter.

4

5    _____

6                            Shari Riemer

7    Dated:   2/4/05

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25